UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHARLES L. SPENCER a/k/a LUKE SPENCER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:18-cv-02302-JPH-MPB |
| MERRELL BROS., INC., | ) ) | |
| Defendant. | ) ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

During an argument at work, Charles "Luke" Spencer—a Merrell Bros.
employee—threatened to "bust" a coworker's head.  After investigating, Merrell
terminated Mr. Spencer, explaining that it would not tolerate threats under its
workplace violence policy.  Mr. Spencer alleges that his age is the real reason
he was terminated.  Merrell has filed a motion for summary judgment.
Because no reasonable jury could find that Merrill terminated Mr. Spencer
because of his age, that motion is **GRANTED**.  Dkt. [37].

**I.**
**Facts and Background**

Because Merrell has moved for summary judgment under Rule 56(a), the
Court views and recites the evidence "in the light most favorable to the non-
moving party and draw[s] all reasonable inferences in that party's favor."
*Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

Merrell hired Mr. Spencer as a truck driver in 2011 when he was in his
early fifties.  Dkt. 42-1 at 15–17, 56 (Spencer Dep. at 31–33, 73).  When he was

hired, Mr. Spencer received Merrell's Policies Handbook, and he received updated versions in 2014 and 2015. *Id.* at 17–22 (Spencer Dep. at 33–38), 106–107, 244. The 2015 policy on "Violence" prohibited employees from threatening or intimidating others:

> Merrell Bros. will not tolerate any threatening or intimidating conduct toward an employee . . . at any time, including threatening . . . another individual, regardless of whether any physical harm results. Violation of this policy will result in disciplinary action, up to and including suspension or termination of employment. If self-defense is supposedly involved, Merrell Bros. reserves the right to decide if the act was truly in self-defense and whether it was warranted. If not warranted, the individual or individuals involved will still be subject to suspension or termination.

*Id.* at 196. For a violation of this policy, Merrell reserved the right "to bypass any and all steps of progressive discipline and proceed directly to termination of employment depending on the severity of the offense." *Id.* at 205.

On October 10, 2017, Mr. Spencer put cones out at a worksite to stop drivers from getting stuck in mud. Dkt. 52-1 at 36–37, 77–78 (Spencer Dep. at 83–84, 156–57). Later that day, a dump truck driver told Mr. Spencer over the work radio that someone had "moved them [fucking] cones again on me." *Id.* at 38 (Spencer Dep. at 85). Mr. Spencer responded by asking, "What [fucking] cones they move?" *Id.*

A third driver, 37-year-old Scott Goley, had decided that the cones did not need to be there and moved them. Dkt. 52-5 at 19, 32 (Goley Dep. at 14, 86). About an hour after hearing Mr. Spencer complain about the cones over the radio, Mr. Goley approached Mr. Spencer. *Id.* at 27 (Goley Dep. at 94). Mr.

Spencer felt threatened and told Mr. Goley four times to back away.  Dkt. 52-1

at 38–39 (Spencer Dep. 85–86).  On the fourth time, Mr. Spencer told Mr. Goley

that if he didn't walk away, he would "bust his head."  *Id.* at 39 (Spencer Dep.

at 86).

The next day, Mr. Goley emailed Ryan Zeck, Merrell's Chief Operating

Officer, to report that Mr. Spencer had threatened him.  Dkt. 42-5 at 26.  Corey

Conn, Merrell's Safety Director, interviewed Mr. Spencer, Mr. Goley, and other

witnesses, and prepared a "Workplace Harassment Investigation" report.  Dkt.

52-4 at 3–14; dkt. 42-3 at 6 (Zeck Dep. at 55).  Mr. Zeck reviewed the report

and spoke to Mr. Spencer and Mr. Goley.  Dkt. 42-2 at 1; dkt. 42-3 at 14–16,

23 (Zeck Dep. at 70–72, 79).

Mr. Zeck and Mr. Conn then met with Mr. Spencer on October 12.  Dkt.

42-1 at 78 (Spencer Dep. at 95); dkt. 42-4 at 29 (Conn Dep. at 90).  During the

meeting, Mr. Spencer said that Mr. Goley got "nose to nose" with him and "was

yelling in [his] face."  Dkt. 42-1 at 79 (Spencer Dep. at 96).  Mr. Spencer

admitted telling Mr. Goley that "he better walk away or [he] would bust his

head."  *Id.* at 78 (Spencer Dep. at 95:16–18).  At the end of the meeting, Mr.

Zeck suspended Mr. Spencer for three days.  *Id.* at 64, 79 (Spencer Dep. at 81,

96.).

At the end of the suspension, Mr. Zeck terminated Mr. Spencer.  *Id.* at 64

(Spencer Dep. at 81), 267.  The "company statement" explained:

> Luke Spencer threatened an employee while on a jobsite
> (see following information).  Page 18 of the company
> policy states that Merrell Bros., Inc. will not tolerate any
> threatening   or   intimidating   conduct   toward   an

employee.   Mr. Spencer admitted to threatening an employee (Mr. Goley) on 10/10/17 at the Valparaiso WWTP.  Following an interview with both Mr. Goley and Mr. Spencer and the admission by Mr. Spencer, he (Mr. Spencer) was suspended on 10/13/17 for 3 work days (10/16/17, 10/17/17, and 10/18/17).   This suspension was then followed by termination on 10/19/17.

*Id.* at 268.  On October 19, Mr. Zeck sent an email to several Merrell employees providing additional detail about the situation with Mr. Spencer.  Dkt. 52-4 at 15–16.  Mr. Zeck described Mr. Spencer as "a 60-year old man who is a great worker, shows up way early for work and has the old-school work ethic I seek in people."  *Id.* at 15.

Mr. Spencer was 60 years old when he was terminated.  *See* dkt. 53 at 1 (citing dkt. 52-1 at 4 (Spencer Dep. at 14)).  He alleges that he was terminated because of his age in violation of the Age Discrimination in Employment Act ("ADEA").[1]

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence

---

[1] Mr. Spencer also alleged disability discrimination in violation of the Americans with Disabilities Act and retaliation and discrimination in violation of the Employee Retirement Income Security Program.  Dkt. 1.  Merrell moved for summary judgment on those claims, dkt. 37, but Mr. Spencer's response does not address them, *see* dkt. 53.  He has therefore "abandoned the claim[s]," *Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008), so Merrell is **GRANTED** summary judgment on those claims.

demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

### III.
### Analysis

"The ADEA protects workers 40 years of age and older from age-based employment discrimination." *Tyburski v. City of Chicago*, 964 F.3d 590, 598 (7th Cir. 2020); *see* 29 U.S.C. § 623(a).  To prevail on an ADEA claim, "it's not enough to show that age was *a* motivating factor.  The plaintiff must prove that, but for his age, the adverse action would not have occurred." *Tyburski*, 964 F.3d at 598.  The question ultimately is whether the evidence would permit a reasonable juror to conclude that age was the reason the plaintiff was fired. *Id.*

#### A. Evidence of Causation

Merrell argues that Mr. Spencer cannot show causation because the designated evidence does not support a connection between Mr. Spencer's age and his termination.  Dkt. 43 at 21–22.  Mr. Spencer responds that a

reasonable jury could infer age discrimination from the email referencing Mr. Spencer's age and Merrell's "shoddy" investigation.  Dkt. 53 at 21–22.

Mr. Spencer argues that Merrell's investigation was "poor" because it failed to interview "critical" eyewitnesses while investigating the incident with Mr. Goley.  *Id.*  While Merrell did not interview two loaders who saw the interaction between Mr. Spencer and Mr. Goley, it promptly investigated by interviewing Mr. Spencer and Mr. Goley and creating an incident report.  *See* dkt. 52-4 at 3–14.  In his interview, Mr. Spencer told Merrell that "if the loaders were not present, I would have busted [Mr. Goley's] head."  Dkt. 42-1 at 69, 73 (Spencer Dep. at 86, 90).  Merrell's investigation concluded that Mr. Spencer did not dispute that he threatened Mr. Goley.  Dkt. 42-1.  The fact that Merrell did not interview the other employees who were present during the altercation does not support an inference of age discrimination.  *See Davis v. Time Warner Cable of Se. Wis.*, 651 F.3d 664, 674 (7th Cir. 2011) (limited investigation "alone does not support an inference" of discrimination, particularly when no evidence shows a break from standard procedure); *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) (even an "imprudent, ill-informed, and inaccurate" investigation must be connected to illegal discrimination to defeat summary judgment).

Mr. Spencer further argues that Merrell has a "pattern of not investigating complaints from older workers."  Dkt. 53 at 21–22.  But none of the previous incidents that Mr. Spencer cites involved threats of violence, *see* dkt. 53 at 21–22, dkt. 59 at 2, 4 (allegations that Mr. Goley failed to wear safety

equipment and fell asleep at a worksite); dkt. 53 at 22, dkt. 59 at 2 (allegations that Mr. Goley drove recklessly and broke traffic laws), so those incidents are not comparable enough to show discrimination, *see Lane v. Riverview Hosp.*, 835 F.3d 691, 696–97 (7th Cir. 2016).  Even if they were comparable, that would not support an inference of discrimination because the investigation that led to Mr. Spencer's termination was done in accordance with Merrell's policies. *See Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 806 (7th Cir. 2014) (alleged "extraordinary departures" from normal investigation procedures did not allow an inference of discrimination because the investigation that led to the termination was not improper or against policy).[2]

Similarly, Mr. Zeck's email referencing Mr. Spencer's age does not allow a reasonable jury to infer age discrimination when viewed in context.  In the same sentence that referenced Mr. Spencer's age, Mr. Zeck said that Mr. Spencer "is a great worker, shows up way early for work and has the old-school work ethic I seek in people."  Dkt. 52-4 at 15.  That context shows that Mr. Zeck did not include Mr. Spencer's age "in reference to the adverse employment action," *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007), so the "isolated comment[ ]" does not allow an inference of discrimination, *Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 605 (7th Cir. 2012).[3]

---

[2] The Court therefore does not address Merrell's argument that Mr. Spencer's allegations about the extent of those investigations are not supported by admissible evidence or are contradicted by record evidence.  *See* dkt. 58 at 6–7.

[3] Indeed, Mr. Zeck's email spanned more than a single-spaced page and included many thoughts about Mr. Spencer, further undermining Mr. Spencer's reliance on part of a single sentence.  Dkt. 52-4 at 15–16. When read in its entirely, the email

*Fleishman* is instructive because there, the Seventh Circuit found no triable issue of fact when a single comment had "no connection" to the termination decision and when "the record reflect[ed] a clear, causally connected chain of events" from complaints, to investigations, to the termination decision. *Id.* This case is no different: Mr. Spencer threated Mr. Goley on October 10, then Merrell investigated on October 11 and 12, suspended Mr. Spencer on October 12, and terminated him at the end of the suspension on October 19.

### B. The *McDonnell–Douglas* burden-shifting framework

Mr. Spencer next argues that a reasonable jury could infer that he was fired because of his age since Mr. Goley—a younger but otherwise similarly situated employee—was not fired. Dkt. 53 at 13. He therefore attempts to show a triable issue of fact under the *McDonnell–Douglas* burden-shifting framework, which is "one way" of showing age discrimination. *Tyburski*, 964 F.3d at 598–99; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under this framework, Mr. Spencer can establish a *prima facie* case of discrimination by designating evidence that (1) he is a member of a protected class, (2) he was meeting Merrell's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees who were not members of his protected class were treated more favorably. *Id.* (citing *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2018). If Mr. Spencer meets

---

reflects that Mr. Zeck valued Mr. Spencer as an employee and viewed the decision to terminate his employment as necessary based on Merrell's policies and what he learned from the investigation. *See id.*

each requirement, the burden shifts to Merrell to designate evidence of a "legitimate, nondiscriminatory reason" for the termination. *Id.* If Merrell does so, the burden shifts back to Mr. Spencer to designate evidence that Merrell's explanation is pretext for unlawful discrimination. *See id.*

Merrell argues that Mr. Spencer does not identify any similarly situated employee who was treated more favorably. Dkt. 43 at 20–21. "The similarly-situated analysis calls for a 'flexible, common-sense' examination of all relevant factors." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). "Similarly situated employees must be 'directly comparable' to the plaintiff 'in all material respects,' but they need not be identical in every conceivable way." *Id.* While it is not a "magic formula," in the "usual case a plaintiff must at least show that the comparators (1) 'dealt with the same supervisor,' (2) 'were subject to the same standards,' and (3) 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Id.* at 847. The inquiry "often hinges on whether co-workers 'engaged in comparable rule or policy violations' and received more lenient discipline." *Id.* at 850–51. Summary judgment is appropriate "only when 'no reasonable fact-finder could find that plaintiffs have met their burden on the issue.'" *Id.* at 846–47.

Mr. Spencer argues that Mr. Goley is similarly situated because they both "had the same supervisor, same job duties, same job title, and were subject to the same job rules." Dkt. 53 at 13–14. He also contends that Mr. Goley's violations of Merrell's anti-violence policy were "more egregious"

9

because he violated the policy "in two ways"—by confronting Mr. Spencer instead of going to management, and by "cornering" Mr. Spencer after "approach[ing] him from behind."  *Id.* at 14–15.  Finally, he argues that Mr. Goley "carried a gun in the workplace" and "had even threatened" Mr. Spencer with it before.  Dkt. 53 at 16.[4]

Mr. Goley's actions, however, are not "similar conduct without such differentiating or mitigating circumstances as would distinguish" them from Mr. Spencer's actions.  *Coleman,* 667 F.3d at 847.  Even if Mr. Goley approached Mr. Spencer from behind, cornered him, and screamed at him "nose to nose," it is undisputed that only Mr. Spencer threatened physical violence.  *See* dkt. 59 at 3–5.  Mr. Spencer admitted that he threatened to "bust" Mr. Goley's head, and that he said if it weren't for two loaders being present, there would have been a physical altercation.  Dkt. 42-1 at 69 (Spencer Dep. at 86).  The designated evidence does not support a similar threat from Mr. Goley, so there is no "selective application of the rule against violence and threats."  *Coleman,* 667 F.3d at 842.

Two cases illustrate this.  First, in *Coleman,* one employee was fired for admitting "thoughts of killing her supervisor" while other employees received one-week suspensions for "threaten[ing] another employee at knife-point."  667

---

[4] As explained above, Mr. Spencer also alleges that Mr. Goley had violated safety rules by not wearing safety equipment, fallen asleep at a worksite, driven recklessly, and broken traffic laws.  Dkt. 53 at 21–22; dkt. 59 at 2, 4.  Even if these allegations are supported by admissible designated evidence, they do not reveal threats of physical violence akin to Mr. Spencer's conduct and Mr. Spencer designates no evidence suggesting that age discrimination affected Merrell's response to those complaints. *See Tank*, 758 F.3d at 806.

F.3d at 841.  The Seventh Circuit held that the employees were similarly situated because they had made violent threats "of *comparable seriousness.*" *Id.* at 850–51.  By contrast, in *Johnson v. Artim Transportation System*, the Seventh Circuit "agree[d]" that employees were not similarly situated even though they both violated the same policy by fighting, because only one employee "slashed" the other "with a knife-like work tool."  826 F.2d 538, 543–44 (7th Cir. 1987) (citing *Green v. Armstrong Rubber Co.*, 612 F.2d 967 (5th Cir. 1980)).  Here, *Johnson*'s reasoning—rather than *Coleman*'s—is the better fit. Getting in someone's face and shouting is not conduct of "comparable seriousness" to a clear, admitted threat to cause serious physical harm. *Coleman*, 667 F.3d at 841; *Johnson*, 826 F.2d at 543–44.

Moreover, Mr. Spencer's response after the incident increases the severity of his actions as compared to Mr. Goley.  Mr. Spencer never apologized to Merrell for his threat, dkt. 42-1 at 79 (Spencer Dep. at 96), leaving Merrell concerned that he would not follow the anti-violence policy in the future, dkt. 52-4 at 16; dkt. 42-4 at 34 (Conn Dep. at 93); dkt. 42-2 at 2 (Zeck Aff.); *see Khowaja v. Sessions*, 893 F.3d 1010, 1016 (7th Cir. 2018) (defending mistakes afterwards is "significant[ ]" in comparing conduct).  Indeed, throughout its investigation and even after firing Mr. Spencer, Merrell was concerned about Mr. Spencer's "continued threats" and ongoing danger to Mr. Goley.  Dkt. 42-4 at 32 (Conn Dep. at 93); dkt. 52-4 at 16.  Because Mr. Spencer—unlike Mr. Goley—admitted a "serious violation of [an] important" policy and did not show that he intended to follow the policy in the future, he has not satisfied the

similarly situated prong of his prima facie case. *Lane*, 835 F.3d at 696; *O'Neal v. Shinseki*, No. 13 C 653, 2015 WL 1396375 at *10 (N.D. Ill. Mar. 24, 2015) (explaining that "[a]n employee who apologizes, accepts responsibility for her failings, and expresses a desire to improve" is not similarly situated to "an indignant employee who digs in his heels and refuses to accept responsibility").

Nevertheless, Mr. Spencer argues that he acted in self-defense, so "the violence in the workplace policy did not legitimately apply to his conduct." Dkt. 59 at 3. But Merrell, in its employee handbook, "reserve[d] the right to decide if the act was truly in self-defense," dkt. 42-1 at 196, and the information that Mr. Zeck relied on allowed Merrell to conclude that it was not. Indeed, Mr. Spencer's own admissions support Mr. Zeck's conclusion. *See* dkt. 42-1 at 68–69 (Spencer Dep. at 85–86). Mr. Zeck therefore did not shoehorn Mr. Spencer's actions into an anti-violence policy that "does not legitimately apply," so his conclusion is not evidence of age discrimination. *Coleman*, 667 F.3d at 855.

Finally, while Mr. Spencer argues that Mr. Goley was known to carry a gun, he does not argue that Mr. Goley had a gun or threatened him with a gun during their confrontation. Dkt. 53 at 3, 16; dkt. 59 at 2. And the uncontested designated evidence shows that Mr. Goley was not carrying a gun on the day of the incident. Dkt. 52-5 at 30–31 (Goley Dep. at 97–98). Mr. Spencer also accuses Mr. Goley of previously threatening him with a gun, but that cannot show disparate treatment because he did not report it to Merrell. Dkt. 52-1 at 69 (Spencer Dep. 148:10–14).

In short, Mr. Spencer concedes that he threatened Mr. Goley with physical violence.  Merrell investigated, concluded that Mr. Spencer violated its anti-violence policy and that there was a substantial risk that he would not follow the policy in the future, and terminated his employment.  *See Fleishman*, 698 F.3d at 605.  These facts do not allow a reasonable jury to find that Mr. Goley and Mr. Spencer were similarly situated, or to otherwise infer age discrimination.  *See Coleman*, 667 F.3d at 846; *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367–68 (7th Cir. 2019).  The Seventh Circuit has "repeatedly said" that courts "do not sit as a super-personnel department to determine which employment infractions deserve greater punishment." *Harris v. Warrick Cty. Sheriff's Dept.*, 666 F.3d 444, 449 (7th Cir. 2012).  "It is enough that the misconduct that led to the adverse job action in question is sufficiently distinct to render the proposed comparators not similarly situated." *Id.*

Here, Mr. Spencer's and Mr. Goley's actions are sufficiently distinct, so Merrell is entitled to summary judgment.[5]

---

[5] Even if Mr. Spencer and Mr. Goley were similarly situated, Mr. Spencer would have to prove pretext—that Merrell's stated reasons for firing him were a lie.  *See Ballance v. City of Springfield*, 424 F.3d 614, 621 (7th Cir. 2005).  Because Mr. Spencer has not met his prima facie case, the Court does not separately address pretext.  *See* dkt. 43 at 16–18.

## IV.
## Conclusion

Merrell's motion for summary judgment, dkt. [37], is **GRANTED**.

Merrell's motion to strike Mr. Spencer's witness and exhibit lists is **DENIED as moot.**  Dkt. [51].  Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 11/24/2020

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Mark Kelly Leeman
markleeman@leemanlaw.com

Laurie E. Martin
HOOVER HULL TURNER LLP
lmartin@hooverhullturner.com